_U?ICKETT, J.
FACTS
In 1985, Ernest L. Parker, William C. Davis, Logan Nichols and Richard Barnett allegedly entered into a partnership for the purchase and operation of Campbell Wells Corporation (hereinafter “CWC”), an oilfield disposal company. Each partner purchased 1,875 shares of CWC stock. These individuals also entered into an equal partnership in CAMPCO, making them owners of certain immovable property used in connection with the oilfield *487 waste disposal facility. The CWC stock issued in the name of Jerry Brazzel, Barnett’s brother-in-law, is the stock allegedly owned by Barnett. Brazzel was allegedly holding Barnett’s stock as his agent.
In 1986, although CWC was highly profitable, Barnett experienced financial difficulties. Allegedly upon the suggestion of Parker, Barnett transferred his CWC Stock Certifícate No. 7, which was actually issued in the name of Jerry Brazzel, and his interest in CAMPCO to Parker to hold in trust upon the condition that Parker return the stock to Barnett once he resolved his financial problems.
The transfer of Barnett’s stock to Parker was evidenced by an act of sale which listed the consideration for the sale to be $1,000.00 and the assumption of certain debts incurred with the purchase of CWC. Parker also obtained Davis’ stock, which resulted in his ownership of 75% of the outstanding stock in CWC.
Parker did not, however, hold the shares in trust. He cancelled the outstanding certificates and re-issued them in his name. Next, he purportedly transferred Barnett’s former shares, which had been re-issued in his name, to Logan Nichols. Nichols cancelled that certificate and had it re-issued in his name, thereby making Parker and Nichols equal owners of CWC.
In 1990 CWC merged with Sanifill Waste, Inc., which ultimately merged with USA Waste, Inc. The stock that Parker and Nichols received from Sanifill in ^connection with the merger was purportedly worth $9 million in the mid-1990’s. It is further alleged that, on March 2, 1995, Parker, Nichols and others formed an enterprise known as Entertainment Ventures Associated (hereinafter “EVA”) with the proceeds of Barnett’s stock. EVA is a Louisiana limited liability company that owns the Louisiana Ice Gators. Barnett further alleges that Parker and Nichols used the proceeds from his original transfer of stock to Parker to make purchases and investments in other ventures.
Subsequently, when Barnett asked for the return of his stock, both Parker and Nichols allegedly refused to do so. Therefore, Barnett brought suit in state court to recover his stock.
In 1991, following legal demand upon Parker for the return of the CWC stock in which Barnett claimed an interest, Barnett brought an action for unjust enrichment in the Fifteenth Judicial District Court, Lafayette Parish, against both Nichols and Parker. That proceeding is filed under suit No. 91-5553 entitled Marsh Engineering, Inc. v. Ernest L. Parker and Logan Nichols. Barnett voluntarily dismissed Nichols from that suit in 1993. Barnett filed suit against Nichols again in 1996 in the Thirty-First Judicial District, Jefferson Davis Parish. This suit is entitled Richard D. Barnett v. Logan Nichols, under Civil Docket Number C-1116-96. Barnett amended his petition in the Lafayette Parish suit to rename Nichols as a defendant. Ultimately, the Jefferson Davis Parish case was dismissed by a grant of summary judgment in favor of the defendant. Subsequently, the Lafayette Parish case was dismissed when the trial court granted Nichols’ exception of res judicata which was based on the dismissal of the Jefferson Davis case.
Barnett appealed both judgments in the state court proceedings to this court. This court reversed the trial court dismissals and remanded the cases for trial. See Barnett v. Nichols, 99-387 (La.App. 3 Cir. 10/13/99); 748 So.2d 496, writ denied, 00-1,0008 (La.2/18/00); 754 So.2d 973, consolidated with Marsh Engineering, Inc. and Barnett v. Parker, et al., 99-217 (La.App. 3 Cir. 10/13/99); 748 So.2d 498.
*488 On September 4, 1998, while the state court cases were pending, Carl Warden filed a Declaratory Judgment Complaint against Richard Barnett in the United States District Court for the Western District of Louisiana. Warden sought a declaration that the assets of the trusts for which he served as trustee belonged to the trustee as legal owner, that Barnett had no right or interest in those assets and that Warden owed no duty to Barnett with respect to the formation or administration of the trusts.
On November 2, 1998, Barnett filed an answer to Warden’s complaint wherein he asserted a counter-claim and third party demand against Warden and others, including Nichols and Parker, pursuant to 18 U.S.C.A. § 1961 et seq., the Racketeer Influenced and Corrupt Organizations Act (“RICO”). December 18, 1998, Nichols filed a Motion to Dismiss Barnett’s counter-claim in the federal suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In his Motion to Dismiss, Nichols argued that Barnett’s counterclaim failed to state a claim upon which relief could be granted under the RICO Act because it was barred by the applicable four-year statute of limitations which began to accrue in 1991 when Barnett filed suit against Nichols and Parker in the Fifteenth Judicial District Court in Lafayette Parish. On June 7, 1999, Nichols’ motion was granted, and the federal court dismissed with prejudice all of Barnett’s claims against Nichols. The dismissal was certified as a final judgment on September 16, 1999.
Subsequently, Nichols filed a peremptory exception of res judicata in the instant case, asserting that the dismissal of Barnett’s RICO counter-claim in federal court was res judicata to the state court claims pending in the Jefferson Davis Parish suit. The exception was heard on March 28, 2000. April 16, 2000, the state district court issued a ruling which sustained Nichols’ exception of res judicata and dismissed Barnett’s 14claims with prejudice. Barnett filed a Motion For New Trial which was denied by the court. It is from this judgment that Barnett appeals.
DISCUSSION
In his sole assignment of error, the appellant argues that the district court erred in finding his state court claim is barred by res judicata.
When a state court is required to determine the preclusive effects of a judgment rendered by a federal court exercising federal question jurisdiction, the state court must apply the federal law of res judicata. McDonald v. Cason, 01-0932 (La.App. 3 Cir. 12/12/01); 801 So.2d 1255 citing Reeder v. Succession of Palmer, 623 So.2d 1268 (La.1993); McCollough v. Dauzat, 98-1293 (La.App. 3 Cir. 3/3/99); 736 So.2d 914. The doctrine of res judicata is to be interpreted strict juris; thus, any doubt concerning application of the principal of res judicata must be resolved against its application. Beaucoudray v. Brumfield, 93-1142 (La.2/25/94); 633 So.2d 1210.
Under federal precepts, “claim preclusion” or “true res judicata” treats a judgment, once rendered, as a full measure of relief to be accorded between the same parties on the same “claim” or “cause of action.” When the plaintiff obtains a judgment in his favor, his claim “merges” in the judgment; he may seek no further relief on the claim in a separate action. Conversely, when a judgment is rendered for a defendant, the plaintiffs claim is extinguished; the judgment then acts as a “bar.” Under these rules of claim preclusion, the effect of a judgment extends to the litigation of all issues relevant to the same claim *489 between the same parties, whether or not raised at trial. Kaspar Wire Works, Inc. v. Leco Eng’g & Mach., 575 F.2d 530 (5th Cir.1978). Restatement (Second) of Judgments §§ 18-20 (1982).
Applying the federal law of res ju-dicata, a subsequent action will be barred if (1) the parties are identical in both actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior judgment was final on the merits; and (4) the cases involve the same cause of action. Andrepont v. Andrepont, 97-1643 (La.App. 3 Cir. 4/1/98); 711 So.2d 759; citing Travelers Ins. Co. v. St. Jude Hospital of Kenner, Louisiana, Inc. 37 F.3d 193 (5th Cir.1994), cert. denied, 514 U.S. 1065, 115 S.Ct. 1696, 131 L.Ed.2d 559 (1995).
s In the instant case, it is clear that the first two prerequisites have been established. The parties in the state suit are the same as those in the counterclaim filed by Nichols in the federal suit. The prior judgment of dismissal was rendered by a court of competent jurisdiction.
Whether the third prerequisite has been met is less clear. Under the provisions of Federal Rules of Civil Procedure Rule 41(b), a dismissal on an exception of prescription is considered to be a final judgment on the merits. However, we note that the aim of claim preclusion is to avoid multiple suits on identical entitlements or obligations between the same parties, accompanied, as they would be, by the redetermination of identical issues of duty and breach and will apply to bar a subsequent action on res judicata principles where parties have previously litigated the same claim to a valid judgment. Reeder, 623 So.2d 1268.
In the instant case, the substantive issues have been neither litigated nor determined. Therefore, we do not find, under the facts before us, that dismissal of a federal claim based on prescription precludes a pending state claim. At the time the RICO claim was filed, the state court claims had been dismissed by the trial court and were pending appeal. Those claims were not reinstated until this court rendered its opinions, reversing the trial court, on October 13, 1999, after the RICO claim was dismissed. The actions are in different judicial systems. These actions are not subject to the same prescriptive periods. . The state claim was timely filed.
We, therefore, do not find the defendant has established res judicata applies so as to dismiss the state claim because we do not find a judgment of dismissal based on prescription, under these facts, to be a “final judgment on the merits” as contemplated by the jurisprudence.
As to the fourth prerequisite, the appellant argues the state court suit and the federal claim involve different causes of action. We disagree. The allegations made | fiin the state suit and the federal suit are virtually identical. Both claims address Barnett’s claim of ownership in the stock and the manner in which it was transferred to Nichols and Parker. Both claims arise from the same transaction or occurrence. It has, therefore, been established that both suits involve the same cause of action.
DECREE
For the reasons stated above, the judgment of the trial court is reversed, and this matter is remanded to the trial court for further proceedings. Costs of this appeal are assessed against the defendant-appel-lee.
REVERSED AND REMANDED.